UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

TANVEER S. MAJID,

    Plaintiff,

v.

COUNTY OF MONTGOMERY,
MARYLAND,
MICHAEL RUANE,
MICHAEL CHINDBLOM,
FERNANDO CARVAJAL,
MARLO REESE,
HENGXIN CHEN,
BETH TABACHNICK,
MARYLAND PUBLIC INFORMATION
ACT OFFICE,
MARY K. DAVISON,
WILLIAM MONTGOMERY,
PAUL REESE and
KATHRYN McCLAFLIN,

    Defendants.

Civil Action No. TDC-20-1517

## MEMORANDUM OPINION

Plaintiff Tanveer S. Majid, who is self-represented, has filed this action against Montgomery County, Maryland ("the County"), several officers of the Montgomery County Police Department ("MCPD"), and other related officials and entities alleging violations of numerous federal criminal statutes and claims under 42 U.S.C. § 1983 for violations of the United States Constitution that occurred during his interactions with the officers. Majid seeks $10 million in punitive damages and injunctive relief. Pending before the Court is Defendants' Motion to Dismiss. The Motion is fully briefed, and the Court finds that no hearing is necessary. See D. Md. Local Rule 105.6. For the reasons set forth below, the Motion will be GRANTED.

## BACKGROUND

Majid filed the original Complaint on June 8, 2020. After Majid filed six Amended Complaints without seeking leave to do so, this Court issued an Order on March 1, 2021 granting Majid leave to file a Seventh Amended Complaint combining the allegations in all prior pleadings. The Order limited the Seventh Amended Complaint to the contents of the original Complaint and all prior Amended Complaints.

In the Seventh Amended Complaint ("the Complaint"), Majid alleges that Defendants "participate in a campaign of ongoing twenty-four (24) hours a day, seven (7) days a week of harassment, stalking and surveillance, collectively known as 'gang stalking' that is being coordinated by" the Central Intelligence Agency ("CIA"). Compl. ¶ 20, ECF No. 34. He asserts that this activity, which dates back to 2013, includes "electronic harassment" by the CIA through the use of "very low frequencies" and "pulsing noises" directed at him "through the electromagnetic spectrum" at a range not perceived by others. *Id.* ¶ 23. Through this surveillance, the CIA informs MCPD officers of his location, and the officers engage in the gang stalking. Majid asserts 67 claims in total against 15 different Defendants that arise from the alleged harassment.

## DISCUSSION

Defendants have filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) in which they argue that (1) the vast majority of Majid's claims are for violations of federal criminal statutes for which there is no private right of action; and (2) Majid has otherwise failed to state a valid claim. To defeat a motion to dismiss under Rule 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements

do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a self-represented plaintiff must still carry "the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## I.  Officers Delapine-Maner and Hess

As an initial matter, Majid's five claims each against MCPD Officers Veronica Delapine-Maner and Luke Hess, neither of whom was named in any prior version of the Complaint, fail because they violate the Court's March 1, 2021 Order limiting Majid's Seventh Amended Complaint "to the contents of the prior filings up to ECF No. 14," which is the Sixth Amended Complaint. Order at 1–2, ECF No. 33. Where these allegations and potential defendants were not referenced in the earlier pleadings, Majid has had ample opportunities to add new claims and defendants, and the expansion of this already wide-ranging set of claims would further delay the case and prejudice Defendants, the Court's restriction was necessary. Accordingly, these claims will be stricken.

## II.  Criminal Violations

Of the 57 remaining claims, 53 allege violations of federal criminal statutes contained in Title 18 of the United States Code. Specifically, Majid alleges violations of 18 U.S.C. § 2261A (stalking), 18 U.S.C. § 1512 (tampering with a witness, victim, or an informant), 18 U.S.C. § 241 (conspiracy against rights), 18 U.S.C. § 1113 (attempt to commit murder or manslaughter), 18 U.S.C. § 1519 (destruction, alteration, or falsification of records in federal investigations and

3

bankruptcy), 18 U.S.C. § 1505 (obstruction of proceedings before departments, agencies, and committees), 18 U.S.C. § 876 (mailing threatening communications), and 18 U.S.C. § 113 (assault within the maritime and territorial jurisdiction of the United States). Defendants assert that these claims must be dismissed with prejudice because only the Government may bring criminal charges against a defendant.

Even accepting Majid's allegations that these statutes have been violated, none of them provide a private right of action or civil remedies. *See Doe v. Broderick*, 225 F.3d 440, 448 (4th Cir. 2000) (stating that "criminal statutes do not ordinarily create individual rights" and that they "express prohibitions rather than personal entitlements and specify a particular remedy other than civil litigation" (citations omitted)); *see also California v. Sierra Club*, 451 U.S. 287, 297 (1981) ("The federal judiciary will not engraft a remedy on a statute. . . that Congress did not intend to provide."). Because there is no private right of action in any of these criminal statutes, nor any basis for inferring one, Majid's 53 causes of action based on criminal statutes will be dismissed.

## III.   42 U.S.C. § 1983

The four remaining claims are civil causes of action under 42 U.S.C. § 1983 against MCPD Officer Michael Chindblom, Officer Kathryn McClaflin, Sergeant Paul Reese, and the County.

### A.   Officer Chindblom

Majid's § 1983 claim against Officer Chindblom arises out of a June 3, 2020 interaction during which, Majid alleges, four MCPD officers and one MCPD therapist came to his home "in an attempt to harass and intimidate" him about a lawsuit he had filed against the CIA and to involuntarily commit Majid to a mental health hospital. Compl. ¶ 28. Majid asserts that after Officer Chindblom knocked on his door, Majid did not allow him to enter but spoke with the officers outside of his home. The officers asked Majid about YouTube videos he has posted,

4

whether he sees a doctor or is in therapy, and whether he wants to hurt anybody. Majid alleges that eventually, he asked Officer Chindblom if he could go inside to get water. Although Officer Chindblom initially said "no," and after a second request suggested that someone inside the house could bring water to him, when Majid stated that he needed water "right now," Officer Chindblom let him go inside to get water. *Id.* Majid alleges that this was "detainment." *Id.* at ¶ 30.

Officer Chindblom argues that this claim must be dismissed because Majid has made only vague allegations that do not allege with any specificity the exact violation that occurred. However, construing the Complaint liberally, *see Erickson,* 551 U.S. at 94, the Court assumes that Majid is asserting a § 1983 claim based on an allegedly illegal seizure under the Fourth Amendment.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Thus, to raise an illegal seizure claim under the Fourth Amendment, a plaintiff must allege both that he has been seized, and then that the seizure was unreasonable. A seizure "does not occur simply because a police officer approaches an individual and asks a few questions." *Florida v. Bostick,* 501 U.S. 429, 434 (1991). Rather, "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio,* 392 U.S. 1, 19 n.16 (1968). To be unreasonable, a seizure either needs to have been unjustified "at its inception," or to have extended beyond the scope of the circumstances that originally justified it. *See id.* at 20.

Here, Majid has not alleged facts stating a plausible claim of a Fourth Amendment violation. Officer Chindblom's initial request to speak to Majid did not implicate the Fourth Amendment. *See Bostick,* 501 U.S. at 434. The fact that Majid refused to allow Officer Chindblom

5

and others to enter establishes that he did not submit to the officers' authority and instead voluntarily agreed to speak with them outside. The officers did not physically restrain Majid in any way. Although Officer Chindblom momentarily sought to restrict Majid from going back into the house to get water, he quickly relented. Even if this minimal intrusion were construed to be a seizure, Majid has not alleged sufficient facts to allow the Court to assess properly whether the officers had the requisite level of suspicion to support this very limited action and to conclude that they did not. Under these facts, Majid has not stated a plausible Fourth Amendment claim for an unreasonable seizure. Accordingly, Majid's § 1983 claim against Officer Chindblom will be dismissed.

### B.   Officer McClaflin

Majid also alleges a § 1983 claim against Officer Kathryn McClaflin based on his arrest by MCPD officers on October 5, 2020 on charges of second-degree assault and using mace or a chemical device with intent to injure arising from an August 12, 2020 confrontation on a public road during which Majid allegedly used pepper spray on another driver.

Majid asserts that Officer McClaflin violated his rights when she "filed the arrest warrant for the incident on October 5, 2020." Compl. ¶ 58. Majid further alleges that the August 12, 2020 roadside confrontation was a "setup." *Id.* ¶ 63. Specifically, he notes that the other driver in that incident has the same first name, "Karla," as the Montgomery County Circuit Judge presiding over a civil case Majid has filed against the social worker who came to his house on June 3, 2020. *Id.* Majid asserts that "[o]ne of the common tactics used in gang stalking and targeting is names and dates." *Id.* Moreover, he alleges that the other driver told him he was "like a little bitch," which he asserts "is street slang for a person who is about to be attacked." *Id.* ¶ 65.

6

Although Defendants argue that this claim must be dismissed because Majid has not alleged with specificity what exact violation occurred, construed liberally, the Complaint asserts a § 1983 claim against Officer McClaflin for a violation of the Fourth Amendment based on an unlawful arrest of Majid. Nevertheless, Majid fails to state a plausible Fourth Amendment claim because he does not allege, or state facts that would support a claim, that the October 5, 2020 arrest warrant was not supported by probable cause. Rather, Majid submitted a video of the incident that shows him in a verbal confrontation with another individual and pointing at that person an object that could be fairly construed as a pepper spray can. He also submitted with the Complaint video footage from Officer McClaflin's body camera showing Officer McClaflin and two other officers responding to the alleged victim, seeing the video of the incident taken by the victim, hearing the victim's description of the encounter, and observing physical signs that the victim had been pepper sprayed. These videos are inconsistent with Majid's allegation that Officer McClaflin improperly sought a warrant for his arrest. Though Majid argues that his actions were justified, the Complaint and its accompanying material do not provide facts that, taken together, support a plausible claim that the arrest was not supported by probable cause. The § 1983 claim against Officer McClaflin will be dismissed.

### C. Sgt. Reese

Majid asserts § 1983 claims against Sgt. Reese based on his actions following Majid's arrest on October 5, 2020. Majid asserts that after he was arrested, he was held in an interrogation room for approximately one hour until Sgt. Reese entered the room and "attempted to interrogate" him without reading Majid his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Compl. ¶ 54. Majid invoked his right to remain silent under the Fifth Amendment but alleges that Sgt. Reese

"ignored" his invocation. *Id.* Majid does not claim that he said anything incriminating to Sgt. Reese.

Majid also claims that Sgt. Reese told him that "his arrest was a planned setup" and that "his intent was to not find the alleged pepper spray or Plaintiff's cell phone but rather execute a search warrant to threaten and intimidate Plaintiff about his current civil cases," as other MCPD officers had done previously. *Id.* Majid contends that as a result of the "planned setup," Sgt. Reese obtained a search warrant for Majid's house by "misleading" the judge. *Id.* ¶ 56. He also alleges that Sgt. Reese, in conducting the search, deliberately intimidated Majid and his mother by wearing a full face mask.

Construing the complaint liberally, the Court assumes that Majid is asserting against Sgt. Reese claims for a violation of his *Miranda* rights under the Fifth Amendment and for a violation of the Fourth Amendment based on an unreasonable search. The Fifth Amendment ensures that no one "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. However, the Fifth Amendment is a "trial right," so a compelled statement, or one given without required *Miranda* warnings, alone does not constitute a Fifth Amendment violation. *See Chavez v. Martinez*, 538 U.S. 760, 767 (2003). "[I]t is not until their use in a criminal case that a violation of the Self-Incrimination Clause occurs." *Id.* Majid has not alleged that any statement from the interrogation by Sgt. Reese has been used against him in a criminal case. In fact, he has not alleged that he made any statement to Sgt. Reese at all. Majid therefore fails to state a plausible claim of a violation of the Fifth Amendment. This claim will be dismissed.

As for the allegedly unlawful search, in claiming that Sgt. Reese misled a state judge in order to obtain a search warrant, Majid relies on two facts. First, he states that Sgt. Reese did not inform the judge that Majid was not questioned about the incident for two months before the

charging documents were filed. There is no requirement that such information be included in a warrant application. Second, he states that Sgt. Reese listed in the warrant application charges against him that were later dropped and notes that only three of the charges listed in the warrant application resulted in convictions. Compl. ¶ 56. Although the probative value of information on arrests rather than convictions is limited, a law enforcement officer does not violate the Fourth Amendment by listing in a warrant application, as Sgt. Reese did here, criminal charges against the subject of the search that did not result in a conviction. Moreover, Majid's general claim that some of the listed criminal charges "do not exist" still does not state a Fourth Amendment claim. *Id.* To do so, Majid would have to allege plausibly not only that the references in the warrant application to certain alleged prior charges against him were intentionally or recklessly false, but that those references were material in that they were "necessary to the neutral and disinterested magistrate's finding of probable cause." *Humbert v. Mayor & City Council of Balt. City*, 866 F.3d 546, 556 (4th Cir. 2017) (alteration accepted). Majid has not done so here and likely could not in light of the consistency between Sgt. Reese's account of the facts in the warrant application and the evidence discussed above in relation to the claim against Officer McClaflin. *See supra* part III.B.

Although Majid also makes the broad allegation that Sgt. Reese told him that the search was a "planned set up" because of the civil cases Majid had filed against MCPD personnel, Compl. ¶ 55, this apparent claim of an improper motive for the search does not state a constitutional claim because, as discussed above, *see supra* parts III.B–C., Majid has not asserted facts that plausibly show a lack of probable cause for his arrest arising from the August 12, 2020 incident or for a search for evidence relating to those charges. *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1725–27 (2019) (holding that as with common law claims, a constitutional claim that an arrest was

9

improperly based on a retaliatory motivation generally cannot succeed unless the plaintiff can establish that there was no probable cause for the arrest); *Whren v. United States*, 517 U.S. 806, 811–13 (1996) (stating that subject to narrow exceptions not applicable here, the Supreme Court has "repeatedly held and asserted" that an officer's motive does not invalidate "objectively justifiable behavior under the Fourth Amendment" and concluding that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis"). Finally, the claim that Sgt. Reese violated the Fourth Amendment by wearing a face mask during the COVID-19 pandemic lacks merit and does not state a valid claim. The Fourth Amendment claim against Sgt. Reese will therefore be dismissed.

### D.    Montgomery County

Lastly, Majid alleges that the County violated "[a]ll the aforementioned Federal Statu[t]es, listed for all the above Defendants" because it employs those Defendants. Compl. at 28. Defendants argue that this claim must be dismissed because Majid has asserted no facts to support a claim that the alleged constitutional violations resulted from a County policy, custom, or practice.

Because there is no vicarious liability for § 1983 claims, *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004), Majid's § 1983 claim against the County may proceed only if he pleads facts that allow the Court to draw the reasonable inference that the County had a custom, policy, or practice that led to Majid's alleged constitutional injuries. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) ("[I]t is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983.") Majid neither alleges such a custom or policy nor offers sufficient facts to establish one, so this claim will also be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss will be GRANTED. A separate Order shall issue.

Date:   September 28, 2021

THEODORE D. CHUANG
United States District Judge